UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AYDEE NARANJO, *individually and on behalf of similarly situated individuals*, | § § § | |
| Plaintiff/Counter-Defendant, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-2883 |
| NICK'S MANAGEMENT, INC., NICK'S CLUBS, INC. f/k/a ADVENTURE PLUS ENTERPRISES, INC. d/b/a PT'S MEN'S CLUB, and NICK MEHMETI, | § § § § § | |
| Defendants/Counter-Plaintiffs. | § § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants Nick's Management, Inc., Nick's Clubs, Inc., and Nick Mehmeti (collectively, Defendants)'s Response to the Court's Order to Show Cause (Doc. 32). For the reasons explained below, the Court **DISMISSES WITHOUT PREJUDICE** Defendants' counterclaims.[1]

I.

BACKGROUND

This is a Fair Labor Standards Act (FLSA) case. From approximately June 2020 to May 2021, Plaintiff Aydee Naranjo worked as an exotic dancer for Defendants. Doc. 1, Compl., ¶ 2. On November 17, 2021, Plaintiff filed a suit "[on] behalf of herself and all other exotic dancers who have worked [for Defendants]," alleging that she and others were "misclassified as independent

---

[1] Because the Court dismisses Defendants' counterclaims on subject-matter jurisdiction grounds, Plaintiff's pending Motion to Dismiss Defendants' Counterclaims (Doc. 18) is **MOOT**.

contractors and . . . were not paid minimum wage or overtime compensation as required by the [FLSA]." *Id.* ¶¶ 1, 7.

On December 20, 2021, Defendants filed counterclaims against Naranjo for breach of contract, unjust enrichment, and attorneys' fees. Doc. 14, Countercl. Defendants claim that when Naranjo began working for them, she executed an agreement that governs the parties' working relationship (the Licensing Agreement). *Id.* ¶ 3. Defendants aver that, through the Licensing Agreement, Naranjo agreed: (1) to "waive her right to a jury and right to participate in a collective action"; (2) to "maintain accurate daily records of all income, including tips, earned while performing"; (3) that, in the event of breach by one party, the other would be "entitled to recover its attorney's fees and costs"; (4) that, if Naranjo believed or determined "that the relationship between the parties [was] something other than licensor/licensee . . . [Defendants would be] entitled to request reimbursement for all Entertainment Fees (as defined in the Licensing Agreement) received by [her] . . . and to provide a full accounting of all income received"; and (5) to "provide no less than (3) days' business notice of her belief that she was being treated as or should be treated as an employee, along with the tip income information for proper reporting for the conversion to an employee-employer relationship." *Id.* ¶¶ 3, 5–15. Defendants contend that Naranjo breached each of these provisions, causing them at least $100,000 in damages. *Id.* ¶¶ 18–23.

Plaintiff filed a motion to dismiss Defendants' counterclaims under Federal Rule of Civil Procedure 12(b)(6), arguing that Defendants' counterclaims are inappropriate in an FLSA action. *See* Doc. 18, Mot. Dismiss Countercl. Because Defendants had not identified an independent basis for subject-matter jurisdiction, the Court ordered Defendants to brief why the Court had subject-matter jurisdiction over their counterclaims. *See* Doc. 26, Order Show Cause. Defendants provided

the requested briefing on July 8, 2022. Doc. 32, Defs.' Show Cause Resp. The Court considers its subject-matter jurisdiction over the counterclaims below.

## II.

## LEGAL STANDARDS

A.    *Subject-Matter Jurisdiction*

"Federal courts are courts of limited jurisdiction." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). For that reason, they can adjudicate claims only when subject-matter jurisdiction "is expressly conferred by the Constitution and federal statute." *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. Aug. 20, 2012). The burden of proof "is on the party asserting jurisdiction." *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)). So, it is Defendants' burden to prove the Court has jurisdiction over their counterclaims.

B.    *Counterclaims and 28 U.S.C. § 1367*

Federal Rule of Civil Procedure 13 defines a compulsory counterclaim as "any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). Any counterclaim that is not compulsory is considered permissive. Fed. R. Civ. P. 13(b).

Historically, the distinction between compulsory and permissive counterclaims largely determined courts' subject-matter jurisdiction. Federal courts were empowered to exercise subject-matter jurisdiction over compulsory counterclaims, *Kuehne & Nagel (AG & Co) v. Geosource, Inc.*, 874 F.2d 283, 292 (5th Cir. 1989), but permissive counterclaims typically required an independent

- 3 -

basis for jurisdiction. *See Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1359 (5th Cir. 1979). The rationale for subject-matter jurisdiction over compulsory counterclaims was not that the Federal Rules of Civil Procedure conferred jurisdiction, *see* Fed. R. Civ. P. 82, but that compulsory counterclaims fell within courts' "ancillary jurisdiction." *Kuehne & Nagel*, 874 F.2d at 292. This type of ancillary jurisdiction—which the Fifth Circuit has since referred to as "factually-interdependent-claim ancillary jurisdiction"—was codified in 1990 when Congress passed 28 U.S.C. § 1367.[2] *See Zimmerman v. City of Austin*, 969 F.3d 564, 567 (5th Cir. 2020); *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 n.1 (5th Cir. 2014).

Section 1367 "combine[d] the doctrines of pendent and [factually-interdependent-claim] ancillary jurisdiction under a common heading": supplemental jurisdiction.[3] *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). Though the Fifth Circuit has not yet weighed in, district courts in this circuit generally agree that, in enacting § 1367, Congress disposed of distinctions between compulsory and permissive counterclaims for the purposes of determining subject-matter jurisdiction and instead provided courts with supplemental jurisdiction over all "claims that are so

---

[2] At common law, the term "ancillary jurisdiction" was used to refer to district courts' power "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent [(factually-interdependent-claim ancillary jurisdiction)]; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees [(ancillary-enforcement jurisdiction)]." *Energy Mgmt.*, 739 F.3d at 257 n.1 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994)). Unlike factually-interdependent-claim ancillary jurisdiction, ancillary-enforcement jurisdiction was not codified by § 1367. *See id.*

[3] "Because of the historical development of the doctrine, courts sometimes refer interchangeably to this type of jurisdiction as either 'supplemental' or ancillary jurisdiction." *Energy Mgmt.*, 739 F.3d at 257 n.1. Since § 1367's enactment, the Fifth Circuit does not appear to recognize that any form of factually-interdependent-claim ancillary jurisdiction continues to exist beyond what was codified as supplemental jurisdiction in § 1367(a). *See id.* (observing that use of the term "ancillary jurisdiction" could refer to either § 1367 supplemental jurisdiction or the uncodified common-law doctrine of ancillary-enforcement jurisdiction); *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 451 (5th Cir. 2022) (using the term "ancillary jurisdiction" but citing to § 1367 and pre-§ 1367 caselaw).

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a); *NatureSweet, Ltd. v. Mastonardi Produce, Ltd.*, 2013 WL 460068, at *4 n.4 (N.D. Tex. Feb. 6, 2013); *Hankins v. Yellow Fin Marine Servs., LLC*, 2015 WL 9004447, at *3 (E.D. La. Dec. 14, 2014) (collecting cases); *Coronado v. D.N.W. Hous., Inc.*, 2014 WL 2779548, at *3 (S.D. Tex. June 19, 2014) (same).

Functionally, the shift from ancillary jurisdiction to supplemental jurisdiction did not alter the traditional rule that courts may exercise subject-matter jurisdiction over compulsory counterclaims. *See Vikas WSP, Ltd.*, 23 F.4th at 451; *Hankins*, 2015 WL 9004447, at *3; *Muse v. Sw. Adventist Univ.*, 2010 WL 11618046, at *2 & n.2 (N.D. Tex. Sept. 23, 2010). However, in enacting § 1367, Congress provided a list of circumstances in which courts may decline to exercise the supplemental jurisdiction provided by § 1367(a). *See* 28 U.S.C. § 1367(c). They are when:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* By § 1367's plain language, these exceptions apply so long as jurisdiction is based on § 1367(a), regardless of whether the counterclaim is compulsory under Rule 13. *See, e.g., Henderson v. Dat Dog Enters., LLC*, 2019 WL 158050, at *4–5 (E.D. La. Jan. 10, 2019); *Espenscheid v. DirectSat USA, LLC*, 2010 WL 2671585, at *3–4 (W.D. Wisc. June 30, 2010); *see also Murphy v. Fla. Keys Elec. Co-op. Ass'n, Inc.*, 329 F.3d 1311, 1318–19 (11th Cir. 2003) (finding a district court did not abuse its discretion in declining to exercise jurisdiction over a compulsory counterclaim). *See generally*

6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1414 (3d ed. April 2022 update). In addition to the circumstances listed in § 1367(c), courts also consider "the common law factors of judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

### III.

### ANALYSIS

Defendants argue that their counterclaims are properly before the Court because they are compulsory under Rule 13(a).[4] Doc. 32, Defs.' Show Cause Resp., 2–9. They further contend that even if some of their claims are not compulsory, the Court should still exercise supplemental jurisdiction over them because none of the reasons for declining jurisdiction under 28 U.S.C. § 1367(c) are present. *Id.* at 9–11. Having reviewed the relevant authorities, the Court concludes that, even assuming it could properly assert supplemental jurisdiction over Defendants' counterclaims, it should decline to exercise such jurisdiction under § 1367(c)(4) because the Fifth Circuit has held that Defendants' counterclaims are inappropriate in an FLSA action.

The Court begins by surveying Fifth Circuit caselaw discussing whether and when defendants may pursue counterclaims in FLSA actions. Next, the Court identifies a split of authority in this circuit regarding whether the Fifth Circuit's traditional bar on counterclaims and offsets in FLSA cases applies to compulsory counterclaims. Finding that it does, the Court finally considers whether Defendants' counterclaims are barred by Fifth Circuit precedent. Because the Court finds that they

---

[4] Defendants do not contend that the Court has an independent basis for asserting subject-matter jurisdiction over their counterclaims. *See* Doc. 14, Countercl.; Doc. 32, Defs.' Show Cause Resp. Thus, the Court's jurisdiction over Defendants' counterclaims, if any, derives from § 1367(a).

are, it declines to exercise supplemental jurisdiction over Defendants' counterclaims pursuant to § 1367(c)(4).

A.    Brennan v. Heard *and the Fifth Circuit's Bar on Counterclaims in FLSA Cases*

"Generally speaking, courts have been hesitant to permit an employer to file counterclaims in FLSA suits for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused." *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010) (footnote omitted) (citing *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974), *rev'd on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). In *Heard*, the Fifth Circuit first considered whether a defendant-employer should be permitted to seek set-offs against back-pay due for the value of goods provided to the plaintiff-employees. 491 F.2d at 3–4. The court determined that it should not, explaining that "Congress' express purpose in passing the [FLSA] [was] to enable a substantial portion of the American work force to maintain a minimum standard of living," which further required that minimum wages "normally be paid 'free and clear.'" *Id.* As the Fifth Circuit later described it, *Heard* held "that set-offs and counterclaims are inappropriate in any case brought to enforce the FLSA's minimum wage and overtime provisions." *Martin*, 628 F.3d at 741.

The *Heard* bar was without exception until 2003, when in *Singer v. City of Waco*, the Fifth Circuit suggested that off-sets were permissible in FLSA cases to the extent that they would not cause the plaintiffs' final award to drop below the statutory minimum wage. *See* 324 F.3d 813, 828 n.9 (5th Cir. 2003). The court later clarified that the *Singer* exception permits counterclaims or set-offs only if they are for sums that "can be considered wages that the employer pre-paid to the plaintiff-employee." *Martin*, 628 F.3d at 742; *see Gagnon v. United Technisource Inc.*, 607 F.3d 1036,

1043 (5th Cir. 2010). Outside of this narrow exception, the Fifth Circuit "continue[s] to look with disfavor" on set-offs and counterclaims in FLSA cases. *Martin*, 628 F.3d at 742.

B.     Heard *Applies to Both Compulsory and Permissive Counterclaims*

Since the Fifth Circuit's most recent opinion on the issue, district courts in this circuit have struggled to reach a consensus on the scope of *Heard*'s bar. Some courts have found that *Heard* bars only permissive—not compulsory counterclaims. *See, e.g., Reyes v. Bona 1372, Inc.*, 2018 WL 1863529, at *1 (E.D. Tex. Apr. 17, 2018); *Cordero v. Voltaire, LLC*, 2013 WL 6415667, at *4–5 (W.D. Tex. Dec. 6, 2013). Consequently, these courts first classify the relevant counterclaims as compulsory Rule 13(a); if they are not, they then cite *Heard* as justification for why they should decline to exercise subject-matter jurisdiction over the counterclaims under § 1367(c). *See Cordero*, 2013 WL 6415667, at *6; *Coronado*, 2014 WL 2779548, at *4; *Beck v. Access eForms, LP*, 2018 WL 295414, at *4–5 (E.D. Tex. Jan. 4, 2018). Other courts take a broader view of *Heard*—finding that it bars *all* counterclaims in FLSA actions so long as they do not fall within the *Singer* exception. *See Henderson*, 2019 WL 158050, at *4–5; *Lund v. Hové Parfumeur, Inc.*, 2018 WL 6267926, at *2 (E.D. La. Nov. 29, 2018). Both of these approaches appears to recognize that *Heard* qualifies as an exceptional circumstance that supports declining to exercise jurisdiction over counterclaims pursuant to § 1367(c). They diverge, however, as to the relevance and import of a counterclaim's Rule 13 classification. As explained below, the Court adopts the broad view of *Heard* and finds that it applies to both compulsory and permissive counterclaims.

To begin, the Court observes that the Fifth Circuit has repeatedly alluded to *Heard*'s robust nature without qualifying its language. *See Martin*, 628 F.3d at 742; *Gagnon*, 607 F.3d at 1042 (finding no error in district court's decision to not address the defendants' counterclaims because

"our precedent suggests that such claims should not be addressed in a FLSA action" (citing *Heard*, 491 F.2d at 4)). More importantly, however, is that the Fifth Circuit has never conducted a Rule 13 analysis prior to applying *Heard*. *See, e.g., Gagnon*, 607 F.3d 1036. In fact, the Court is unaware of a single instance in which the Fifth Circuit has even mentioned Rule 13 in the same opinion that it applied *Heard*. For this reason, the Court is hesitant to interpret the Fifth Circuit as having implicitly limited *Heard* to permissive counterclaims. To the contrary, the Court believes that *Heard* is best understood as the Fifth Circuit has described it: a "bright-line" rule with a single, "narrow exception." *Martin*, 628 F.3d at 742.

The above conclusion is reinforced by the inherent conflict between the policies underlying Rule 13(a) and the interpretation of the FLSA that underlies *Heard*'s bar. The compulsory counterclaim rule "was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *See S. Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962). By contrast, *Heard* describes the FLSA as prescribing a purposefully narrow inquiry:

> Congress has determined that the individual worker should have both the freedom and the responsibility to allocate his minimum wage among competing and economic personal interests. Defendants succeeded below in preventing the full exercise of that employee discretion, which has been mandated by the FLSA and specifically recognized by this Court. The FLSA decrees a minimum unconditional payment and the commands of that Act are not to be vitiated by an employer, either acting alone or through the agency of a federal court. The federal courts were not designated by the FLSA to be either collection agents or arbitrators for an employee's creditors. Their sole function and duty under the Act is to assure to the employees of a covered company a minimum level of wages. Arguments and disputation over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the Act. The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act. Set-offs against back pay awards deprive the employee of the "cash in hand" contemplated by the Act, and are therefore inappropriate in any

> proceeding brought to enforce the FLSA minimum wage and overtime provisions,
> whether the suit is initiated by the individual employees or by the Secretary of Labor.

*Heard*, 491 F.2d at 4 (citation omitted). It would be antithetical to *Heard* to permit counterclaims in FLSA actions simply because they may fall within the intentionally broad reach of Rule 13(a). Accordingly, the Court will apply *Heard* without deciding whether Defendants' counterclaims are compulsory or permissive.

C.    Heard *Bars All of Defendants' Counterclaims*

Having concluded that *Heard*'s bar on counterclaims constitutes an extraordinary circumstance that may warrant declining jurisdiction under § 1367(c)(4) and that *Heard* applies to both compulsory and permissive counterclaims, the Court now considers whether Defendants' counterclaims fall within the scope of *Heard*'s bar.[5]

Defendants concede that "courts may be 'hesitant' in this context to allow counterclaims," but assert that "pre-payments and overpayments are allowed to be set off, provided they do not cause the wages to fall below the statutory minimum wage." Doc. 20, Defs.' Resp., 2–3. According to Defendants, their counterclaims fall under the *Singer* exception to *Heard*'s bar. *Id.* at 3. The Court disagrees.

Defendants' claims for (1) breach of the Licensing Agreement's collective action waiver; (2) breach of the Licensing Agreement's notice and record-keeping mandates; and (3) attorneys' fees, are certainly not for "wages that [Defendants] pre-paid to [Naranjo]." *See Martin*, 628 F.3d at 742; *cf. Heath v. L.L.C., Inc.*, 2021 WL 327702, at *5 (W.D. Tex. Feb. 1, 2021) (dismissing a breach-of-

---

[5] Although the Court addresses *Heard* as an issue bearing on subject-matter jurisdiction, the Court recognizes that the parties briefed its applicability in the context of Plaintiff's motion to dismiss Defendants' counterclaims. *See* Doc. 18, Mot. Dismiss Countercl.; Doc. 20, Defs.' Resp. For this reason, the Court draws on the parties' 12(b)(6) briefing in considering the instant issue.

contract counterclaim in an FLSA case premised on the plaintiff's alleged breach of a collective action waiver), *report and recommendation adopted by* 2021 WL 2908647 (W.D. Tex. Mar. 2, 2021). Indeed, these claims do not seek to recover money that was prepaid at all. Defendants' remaining claims for breach of contract and unjust enrichment, which stem from Naranjo's alleged failure to reimburse Defendants for Entertainment Fees received from customers, similarly fail. While these claims have some tangential relationship to money Naranjo ultimately received, similar attempts to recharacterize contract damages as pre-paid wages have been rejected by courts.[6] *Jones v. JGC Dall. LLC*, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17, 2012) ("[T]he dance fees sought as a set-off do not represent wages pre-paid to Plaintiffs or wage obligations already fulfilled. The dance fees are more akin to the set-off sought in *Martin* because they represent the damages flowing from Plaintiff's alleged repudiation or breach of the parties' agreement in bringing this lawsuit."), *report & recommendation adopted by* 2012 WL 4169685 (N.D. Tex. Sept. 19, 2012); *Rafeedie v. L.L.C., Inc.*, 2011 WL 13324296, at *2 (W.D. Tex. Aug. 25, 2011) (dismissing counterclaims for similar "Entertainment Fees" as barred by *Heard*); *cf. Gagnon*, 607 F.3d at 1043 (finding that off-sets for per diem payments did not fall within the *Singer* exception to *Heard*); *Boudreaux v. Schlumberger Tech. Corp.*, 2020 WL 528784, at *4 (W.D. La. Jan. 31, 2020) (holding that off-sets for discretionary bonuses did not fall within the *Singer* exception). Accordingly, the Court finds that all of Defendants' counterclaims are barred by *Heard*. Thus, even assuming that the Court could assert supplemental jurisdiction over Defendants' counterclaims under § 1367(a), the Court finds exceptional

---

[6] Defendants appear to believe that applying *Heard* to bar these counterclaims would violate the Court's duty to accept Defendants' well-pleaded facts as true—namely, that "Plaintiff is an independent contractor seeking to be converted into an employee." *See* Doc. 20, Defs.' Resp., 4. The Court disagrees because application of *Heard* does not require a predicate finding that the plaintiff was the defendant's employee. *See, e.g.*, *Jones*, 2012 WL 4119570, at *1, *4 (applying *Heard* in a case where the parties disputed whether the plaintiff was the defendants' employee); *Coronado*, 2014 WL 2779548, at *4.

circumstances warrant declining to exercise that jurisdiction. *See* 28 U.S.C. § 1367(c)(4). *See generally Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (noting that "a district court declining to adjudicate state-law claims on discretionary grounds need not first determine whether those claims fall within its [supplemental] jurisdiction" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). While Defendants may bring their state-law claims in state court, they are not properly before the Court in this action.[7]

## IV.

## CONCLUSION

For the reasons described above, the Court finds that Defendants' counterclaims are barred by Fifth Circuit precedent and that it should therefore decline to exercise jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(4). As such, the Court **DISMISSES** Defendants' Counterclaims (Doc. 14) **WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**SO ORDERED**.

**SIGNED: August 5, 2022.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[7] To the extent Defendants aver that some or all of their claims would be barred by the compulsory counterclaim rule if brought in a separate action, the Court notes that (1) there is no apparent basis for federal subject-matter jurisdiction if the claims were brought by Defendants in a separate federal case; (2) the federal compulsory counterclaim rule is a function of federal procedural law; and (3) the Texas compulsory counterclaim rule defines a counterclaim as compulsory only if it is "within the jurisdiction of the court," Tex. R. Civ. P. 97(a), meaning that declining jurisdiction over Defendants' counterclaims in this case will not preclude them from pursuing them in Texas state court.