UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AYDEE NARANJO, individually and on behalf of similarly situated individuals, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-2883-B |
| NICK'S MANAGEMENT, INC.; NICK'S CLUBS, INC. f/k/a ADVENTURE PLUS ENTERPRISES, INC. d/b/a PT'S MEN'S CLUB; and NICK MEHMETI; | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Second Motion to Dismiss (Doc. 34) filed by Defendants Nick's Management, Inc.; Nick's Clubs, Inc. d/b/a PT Men's Club; and Nick Mehmeti. For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion. The Court finds Naranjo may assert her individual claim for unpaid wages because she had standing to sue and adequately pleaded conditions precedent. However, the Court dismisses Naranjo's collective action allegations because she signed an enforceable collective action waiver.

### I.
### BACKGROUND

This is a Fair Labor Standards Act ("FLSA") case. From approximately June 2020 to May 2021, Plaintiff Aydee Naranjo worked as an exotic dancer for Defendants. Doc. 33, Am. Compl., ¶ 2. Naranjo signed a license and lease agreement (the "Licensing Agreement") with Defendant Nick's Club's, Inc. d/b/a PT Men's Club ("PT") on June 30, 2020. *See* Doc. 34-1,

Mehmeti Decl., Ex. 1 at 5. The Licensing Agreement stated Naranjo was not an employee; instead, Naranjo was to perform as an exotic dancer for PT as a "licensee" and "tenant" in exchange for entertainment fees and tips from patrons. *See id.* Ex. 1 at 5. The Licensing Agreement contains a class and collective action waiver[1] and an arbitration clause. *See id.* at 9–10.

On May 7, 2021, Naranjo's counsel advised Defendants' counsel that Naranjo intended to assert claims for unpaid wages against Defendants. Doc. 45-3, Savytska Decl., ¶ 3. On July 30, 2021, Defendants' counsel sent Naranjo's counsel a letter in an attempt to "avoid delays or potential litigation." *See id.* Ex. 1 at 5. The letter explained that Defendants were sending Naranjo the wages they would have owed Naranjo had she been an employee. *See id.* Ex. 1 at 5. Enclosed with the letter was a check for $2,350.38. *Id.* ¶ 4, Ex. 1 at 6. But this money was offered subject to an offset in the amount of the fees and tips Naranjo received under the Licensing Agreement. *See id.* Ex. 1 at 5. Naranjo's counsel sent a letter to Defendants' counsel on August 3, 2021, informing them that Naranjo "w[ould] not be cashing the check." *See id.* Ex. 2 at 8. Naranjo's counsel further stated, "The overwhelming weight of authority holds that the type of offset described in your letter is unlawful," and advised that unless Defendants wanted to discuss settling Naranjo's claims, Naranjo would file her claims in court. *See id.* Ex. 2 at 8.

On November 17, 2021, Naranjo filed her Original Complaint (Doc. 1), "on behalf of herself and all other exotic dancers who have worked [for Defendants]," alleging that Defendants misclassified Naranjo and other exotic dancers as independent contractors, did not pay them minimum wage or overtime compensation as required by the FLSA, and subjected

---

[1] The provision waives participation in and representation of both collective and class actions, but the Court will refer to this waiver as a "collective action waiver" or "collective action provision" for readability.

them to kickbacks that were unlawful under the FLSA. Doc. 1, Original Compl., ¶ 1. Defendants moved to dismiss. Doc. 13, First Mot. Dismiss. On June 28, 2022, the Court granted in part and denied in part Defendants' First Motion to Dismiss. *See* Doc. 27, Mem. Op. & Order, 1. The Court dismissed Naranjo's claim for unlawful kickbacks with prejudice "to the extent kickbacks [we]re pleaded as an independent cause of action." *Id.* at 6. The Court denied the motion in all other respects but ordered Naranjo to file an amended complaint alleging facts to support her contention that she is not bound by the Licensing Agreement's collective action waiver. *Id.* at 5, 9.

Naranjo filed an Amended Complaint (Doc. 33), and Defendants filed a Second Motion to Dismiss (Doc. 34). In their motion, Defendants suggested that Naranjo never rejected the payment that Defendants offered by check. Doc. 34, Second Mot. Dismiss ¶¶ 3, 8. On October 14, 2022, the Court ordered the parties to submit supplemental briefing on whether Naranjo had standing to bring this suit. Doc. 44, Order Suppl. Br. The Court considers the Motion and supplemental briefing below.

## II.

## LEGAL STANDARD[2]

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief

---

[2] Defendants do not explicitly state the legal basis for their Motion to Dismiss. Defendants' authorities address motions to dismiss for failure to state a claim. *See, e.g.*, Doc. 34, Second Mot. Dismiss, ¶ 1 n.1 (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). And Defendants assert, "As the Amended Complaint references communications between counsel, the letter attached to the Declaration in Support of the Original Counterclaim . . . is appropriate for consideration in the context of a Rule 12(b)(6) motion." *Id.* at ¶ 2 n.5. The Court therefore construes Defendants' motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alterations and internal quotations omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alterations and internal quotations omitted).

## III.

## ANALYSIS

Defendants present three arguments why Naranjo's claims should be dismissed in whole or in part. First, they implicitly argue that, because they sent Naranjo a check for the amount of wages sought, Naranjo lacked standing to bring her claims in federal court. Second, Defendants argue that Naranjo's claims should be dismissed because she failed to satisfy multiple conditions precedent before filing suit. Finally, Defendants argue that Naranjo's collective action allegations

should be dismissed because she signed an enforceable collective action waiver. As explained below, the Court finds that Naranjo had standing to bring this suit and is not required to explicitly plead satisfaction of conditions precedent. However, because Naranjo signed an enforceable collective action waiver, the Court dismisses her collective action allegations with prejudice.

A.      Standing

The Court begins with standing. In their Second Motion to Dismiss, Defendants claim that before this lawsuit, Defendants sent Naranjo a check for "the wages that would have been due had [Naranjo] been an employee," and Naranjo kept the check. Doc. 34, Second Mot. Dismiss, ¶ 8. Defendants avoid asserting that Naranjo accepted or cashed the check, claiming rather "the check has not been returned." *Id.* ¶ 2. They argue because "counsel for Plaintiff remains in possession of [payment for the alleged unpaid wages], there is no dispute to be resolved by the Court." *Id.* ¶ 8. In light of this ambiguous statement, the Court ordered supplemental briefing on standing, including whether Naranjo received the check and notified Defendants of her acceptance or rejection. *See* Doc. 44, Order. The Court determines that Defendants' tender of the check did not deprive Naranjo of standing to sue.

Article III of the Constitution limits the jurisdiction of federal courts to certain "Cases" and "Controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue" at the outset of litigation. *Id.* (internal quotations omitted). To establish standing, a plaintiff must meet three requirements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal

connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations, quotations, and alterations omitted). If a plaintiff does not have this requisite personal interest, he cannot sue in federal court.

Related to standing is the doctrine of mootness, which the Supreme Court has repeatedly described as "the doctrine of standing set in a time frame." *See, e.g.*, *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997). Mootness dictates that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.*

Within the last decade, the Supreme Court decided *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) and *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), which addressed mootness in the context of offers of judgment. Under Federal Rule of Civil Procedure 68(a), a defendant may, at most stages before trial, "serve on an opposing party an offer to allow judgment on specified terms." If a plaintiff timely accepts this offer, the clerk must enter judgment in the case. Fed. R. Civ. P. 68(a). Although the effect of an *accepted* offer of complete relief was clear, several federal courts of appeal were divided as to the effect of an *unaccepted* offer of complete relief. *Genesis Healthcare*, 569 U.S. at 72. In *Genesis Healthcare*, the Supreme Court assumed, without deciding, that an offer of complete relief under Rule 68 moots a plaintiff's claim, even if unaccepted. *Id.* at 73.

The question was properly presented to the Supreme Court three years later in *Gomez*. The Court held "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Gomez*, 577 U.S. at 165. In reaching this conclusion, the Court reasoned, "Under basic principles of contract law, Campbell's settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy. Absent Gomez's acceptance, Campbell's settlement offer remained only a proposal, binding neither Campbell nor Gomez." *Id.* at 163 (internal citation omitted). However, the Supreme Court declined to decide "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* at 166.

Unsurprisingly, lower courts have disagreed over whether *Gomez* leaves daylight between an accepted offer of judgment, which allows the clerk to enter judgment, and an unaccepted offer of judgment, which has no effect. *See, e.g.*, *Kuntze v. Josh Enters., Inc.*, 365 F. Supp. 3d 630, 640 (E.D. Va. 2019) (collecting cases). And, as relevant here, there is a split of authority concerning whether a defendant can moot a plaintiff's claim by sending the plaintiff a check for the full amount of damages sought. *Compare, e.g.*, *Lary v. Rexall Sundown, Inc.*, 686 F. App'x 63, 65–66 (2d Cir. 2017) (holding the action was not mooted by the defendant sending the plaintiff a check for the full amount sought because "[the plaintiff] did not accept the check, nor did [the defendant] seek leave to deposit the amount of its offer with the District Court"), *with* Order, Ponsurayamas v. Teppo Partners, L.P., No. 3:15-cv-2345-N (N.D. Tex. Aug. 10, 2016), ECF 22 (Godbey, J.) (finding plaintiff's claims moot because defendant mailed the plaintiff checks for the full amount of damages sought), *and Demmler v. ACH Food Cos.*, 2016 WL 4703875, at *4 (D. Mass. June 9, 2016) ("[T]his Court cannot offer [the plaintiff] individually any more relief on his

underlying claim than [the defendant] provided when it tendered the $75 check. This dynamic served to moot the case. . . . [The plaintiff's] refusal to accept the $75 is immaterial.").

Although these cases address the "requisite personal interest" in the context of mootness, a similar principle applies in the standing context. *See, e.g.*, *Luman v. Theismann*, 647 F. App'x 804, 806 (9th Cir. 2016) ("[Plaintiff] filed his complaint two months after he received a monetary refund from [one of the defendants], and therefore no longer met the injury-in-fact requirement for standing at the time he filed his complaint."). If a plaintiff accepts the total amount of damages he would seek in litigation in satisfaction of the claims he would bring, the plaintiff would lack the "requisite personal interest" required to have standing in federal court.

If there is any daylight between accepted and unaccepted settlement offers—and the Supreme Court has not confirmed that there is—it appears to be limited to situations where a defendant is able to somehow unconditionally and irrevocably deliver the full amount to the plaintiff or deposit it with the court. It might also be necessary, at least once litigation has commenced, that a court enter judgment for the claim to be moot. *See Fisher v. Aetna Life Ins.*, 478 F. Supp. 3d 489, 496 (S.D.N.Y. 2020), *aff'd*, 32 F.4th 124 (2d Cir. 2022) ("[T]he *Gomez* exception does not apply here because the Court hasn't yet entered judgment for Fisher."). Ultimately, the Court need not attempt to delineate the doctrine because Defendants' attempt to deprive Naranjo of standing is deficient in several respects.

Naranjo claims that she rejected Defendants' check on August 3, 2021. Doc. 45, Pl.'s Suppl. Br., 4–5. She attaches as evidence a Declaration from Olena Savytska, Naranjo's counsel of record (Doc. 45-3, Savytska Decl., 2–3) and a letter sent by Ms. Savytska to Defendants on August 3, 2021 (Doc. 45-3, Savytska Decl., Ex. 2 at 8). Ms. Savytska declared under oath that

Naranjo rejected Defendants' check on August 3, 2021. Doc. 45-3, Savytska Decl., ¶ 5. The attached letter corroborates this claim. The letter stated, "[Naranjo] will not be cashing the check you have enclosed." *Id.* Ex. 2 at 8. In the letter, Ms. Savytska further stated, "The overwhelming weight of authority holds that the type of offset described in your letter is unlawful," and unless Defendants wanted to discuss settling Naranjo's claims, Naranjo would file her claims in court. *See id.* Ex. 2 at 8. Ms. Savytska destroyed the check shortly thereafter. *Id.* ¶ 6. Defendants protest, "Nothing in the letter confirmed the acceptance or rejection of the check, as Plaintiff sought to have it both ways." Doc. 46, Defs.' Suppl. Br., 3. Contrary to Defendants' claim, the Court finds that Naranjo rejected the check. In any event, as Defendants admit, the letter did not accept the check. And "an unaccepted settlement offer or offer of judgment does not [deprive a plaintiff of standing to sue]." *See Campbell-Ewald*, 577 U.S. at 165. Further, the tendered check was not unconditional, as Defendants demanded an offset, Doc. 45-3, Savytska Decl., Ex. 1 at 5, and was not for the total amount sought, *see* Doc. 45, Pl.'s Suppl. Br., 6.

The Court finds that when Naranjo brought this suit, she had an injury in fact (the alleged unpaid wages) that is fairly traceable to the alleged conduct of Defendants (improperly classifying and paying her as an independent contractor) that could be redressed by a favorable determination by this Court. Accordingly, Naranjo had standing to bring her claim when it was originally filed. And at no point during the litigation did Naranjo accept the check tendered by Defendants. Therefore, her claims are not moot and a live case and controversy exists.

B.    *Consideration of the Licensing Agreement*

Defendants attach a declaration from Nick Mehmeti (Doc. 34-1) to their Second Motion to Dismiss and include a copy of the Licensing Agreement as an exhibit to the declaration. *See*

Doc. 34-1, Mehmeti Decl., Ex. 1 at 5–17. This Licensing Agreement is the primary basis for Defendants' Motion to Dismiss. First, Defendants argue that Naranjo's class allegations should be dismissed because she waived her right to bring a collective action in the Licensing Agreement. Doc. 34, Second Mot. Dismiss, 4–6. And second, Defendants argue that this action should be dismissed because Naranjo failed to meet a condition precedent contained in the Licensing Agreement. *Id.* at 6–7. Because Defendants' arguments rely on the Licensing Agreement, the Court first addresses whether it may properly be considered. Finding that it may, the Court then turns to the substance of Defendants' Motion.

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotations omitted). A court may consider documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Courts treat such documents as incorporated into the plaintiff's complaint. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 & n.16 (N.D. Tex. 2011) (Lynn, J.) (citing Fed. R. Civ. P. 10(c)). Although the Fifth Circuit has not stated a test for determining whether a document is central to the plaintiff's claim such that a trial court may consider it when resolving a 12(b)(6) motion, Fifth Circuit precedent makes clear that a document is central to the plaintiff's claim only if "necessary to establish an element of one of the plaintiff's claims." *Id.* at 662.

In its Memorandum Opinion and Order on Defendants' first motion to dismiss (Doc. 27), the Court stated that the Licensing Agreement is likely central to Naranjo's collective action claim because the Licensing Agreement speaks directly to her ability to pursue the claim. Doc. 27, Mem. Op. & Order, 5. But the Court refused to dismiss the collective action claim without giving Naranjo an opportunity to present her arguments as to the enforceability of the Licensing Agreement. *Id.* Defendants again urge that the Court may properly consider the Licensing Agreement. *See* Doc. 34, Second Mot. Dismiss, 2 n.1. Although there is persuasive precedent suggesting the Court may not consider the Licensing Agreement, *see, e.g.*, *Layton v. Mainstage Mgmt., Inc.*, 2022 WL 2760533, at *4 (N.D. Tex. May 3, 2022) (Godbey, J.), the Court notes that Naranjo does not contest Defendants' argument. The Court therefore considers the issue waived and considers the Licensing Agreement in evaluating Defendants' Motion to Dismiss.

Defendants contend that the Court may also consider "the letter attached to the Declaration in Support of the Original Counterclaim" in evaluating the Motion to Dismiss because "the Amended Complaint references communications between counsel." Doc. 34, Second Mot. Dismiss, 3 n.5. But mere reference is not enough. *See Causey*, 394 F.3d at 288 ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to her claim.") (emphasis added). The letter, which communicated a settlement offer, is not central to Naranjo's claims because it is not "necessary to establish an element of one of [her] claims." *See Kaye*, 453 B.R. at 662. The Court therefore does not consider the letter in evaluating the Motion to Dismiss.

C.    *Conditions Precedent*

In their Second Motion to Dismiss, Defendants argue that Naranjo's claims should be dismissed because she failed to meet two conditions precedent to bringing suit. Defendants argue that the Licensing Agreement required Naranjo "to provide the Defendants three business' [sic] days' notice of her belief of treatment as an employee and provide her tip income information." Doc. 34, Second Mot. Dismiss, ¶ 7. Defendants note, "[T]he Complaint [does] not referenc[e] performance of any condition precedent." *Id.* ¶ 8 n.20. "Accordingly," they conclude, "unless and until the condition precedent of notice is met, this lawsuit must be dismissed or stayed." *Id.* ¶ 8. Naranjo argues that the Licensing Agreement does not create conditions precedent, the asserted conditions precedent are against public policy and therefore unenforceable, and, to the extent the Licensing Agreement does create conditions precedent, she complied with their requirements. *See* Doc. 42, Resp., 2 & n.1.

1.   Pleading Conditions Precedent

The Fifth Circuit has not addressed whether it is necessary to allege performance or occurrence of conditions precedent to survive a motion to dismiss. *See Probado Techs. Corp. v. Smartnet, Inc.*, 2010 WL 2232831, at *8 n.5 (S.D. Tex. June 2, 2010). Lower courts in this circuit have generally declined to require plaintiffs to explicitly plead conditions precedent to survive a motion to dismiss.[3] *See, e.g., Sandhar v. Grewal*, 2009 WL 175073, at *4 (S.D. Tex. Jan. 23, 2009) ("Counter–Defendants move to dismiss Counter–Plaintiffs' breach of contract claims because 'Counter–Plaintiffs have failed to plead that all conditions precedent to recovery have been met

---

[3] A lower court in this circuit found that Rule 9(c) requires plaintiffs to explicitly plead conditions precedent. *See 84 Lumber Co. v. Paschen*, 2017 WL 467679, at *7 (E.D. La. Feb. 3, 2017). However, most courts do not understand Rule 9(c) to "impose an obligation on plaintiffs to plead the performance or occurrence of conditions precedent." *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1303 & n.12 (4th ed. 2022) (collecting cases). In any event, *84 Lumber* is not a FLSA case, and the Court does not find it persuasive in this case.

or performed.' The Court does not agree that this level of specificity is necessary . . . ."); *Carter v. H2R Rest. Holdings, LLC*, 2017 WL 4174805, at *9–10 (N.D. Tex. Aug. 1, 2017) (Horan, Mag. J.), *report and recommendation adopted*, 2017 WL 4174800 (N.D. Tex. Sept. 19, 2017) (finding the "alleg[ation] that 'it is apparent at this stage in the litigation that Plaintiff properly pleaded a Title VII claim'" implied the plaintiff "necessarily must have fulfilled any conditions precedent" and was sufficient to survive a motion to dismiss) (alterations omitted). However, a plaintiff must plead the occurrence or performance of a condition precedent if it is an element of their claim. *See, e.g.*, *Blount v. Kay*, 2016 WL 698146, at *5 (S.D. Miss. Feb. 19, 2016). Thus, courts in the Fifth Circuit have generally found a plaintiff has no duty to plead performance or occurrence of a condition precedent unless the condition precedent is an element of the claim. A majority of federal courts agree with this approach. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1303 (4th ed. 2022) (collecting cases).

While Defendants note, "[T]he Complaint [does] not referenc[e] performance of any condition precedent," Doc. 34, Second Mot. Dismiss, ¶ 8 n.20, they cite no authority that holds a condition precedent is an element of a FLSA claim. Nor is the Court aware of any. In the Fifth Circuit, a FLSA claim has four elements: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (internal quotations omitted). When a plaintiff alleges these four elements, they implicitly assert that any conditions precedent have been satisfied. Neither the FLSA nor Rule 9(c) require this assertion be made explicitly.

Accordingly, the Court finds that Naranjo is not required to plead the performance or occurrence of conditions precedent to state her FLSA claim.

>   2.   Performing Conditions Precedent

To the extent that Defendants argue Naranjo's claims should be dismissed because she did not perform conditions precedent (as opposed to Naranjo failed to state a claim by not pleading performance of conditions precedent), the Court declines to consider the argument at this time. The issue is properly raised at this stage, as a party must raise nonperformance of a condition precedent in his first responsive pleading. *See EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 331–33, 332 n.16 (5th Cir. 2012). But whether Naranjo met the condition precedent is a fact-bound issue ill-suited for resolution on a motion to dismiss. *See WG Monterrey Venture LLC v. DIG Monterrey Vill., LLC*, 2021 WL 327708, at *4 (W.D. Tex. Feb. 1, 2021) ("The failure of a condition precedent, or whether such failure may be excused, presents factual issues ill-suited to resolution on a motion to dismiss.") (internal quotations omitted). Once a defendant properly challenges performance of a condition precedent under Rule 9(c), the issue is properly resolved at summary judgment or trial. *See EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753 n.4 (5th Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 1048 (2021) (citing favorably Wright & Miller, *supra* for the proposition, "[I]f the defendant properly challenges the [Rule 9](c) allegation, a disputed issue will have been raised that may be resolved only on a summary judgment motion or at trial").

The Court therefore declines to dismiss Naranjo's complaint for failure to explicitly plead conditions precedent, and Naranjo's individual FLSA claims survive the Motion to Dismiss. The Court turns to Naranjo's collective action allegations.

D.    *Collective Action Allegations*

Defendants argue Naranjo waived her right to participate in a collective action by signing the Licensing Agreement, and thus her collective allegations should be dismissed. Doc. 34, Second Mot. Dismiss, ¶ 6. Naranjo argues Defendants have waived their ability to invoke the collective action provision for two reasons: (1) Defendants did not timely produce the Licensing Agreement and (2) Defendants invoked the judicial process in a manner inconsistent with their rights to compel arbitration. Doc. 42, Resp., 6–9. Waiver of arbitration is relevant, Naranjo argues, because the collective action provision is part of a "cohesive alternative dispute resolution process . . . requiring all litigation to be conducted in individual arbitration." *Id.* at 9. Thus, if Defendants waived arbitration, they are precluded from invoking the collective action waiver. *Id.* The Court first addresses whether Defendants waived the Licensing Agreement's collective action provision. Finding that they did not, the Court then addresses who may enforce the collective action waiver.

1.    Waiver of the Collective Action Provision

i.    *Failing to produce the Licensing Agreement*

Naranjo asked Defendants to produce any agreement between the parties multiple times prior to this litigation. *Id.* at 7. Defendants waited seven months to produce the Licensing Agreement. *Id.* Naranjo urges this delay constitutes waiver of the right to arbitrate (and by extension, the right to enforce the class action provision). *Id.* at 6–7.

A party may waive a contractual right through "intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). "Waiver is largely a matter of intent, and for implied waiver to be found through a party's

actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). Naranjo cites no authority supporting her argument that failure to produce a contract for seven months waives a party's right to enforce that contract. And in general, mere delay is insufficient for a court to find waiver. *See, e.g.*, *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 576 (Tex. 2014) ("[M]ere delay in moving to compel arbitration is not enough for waiver."). Defendants' delay does not clearly demonstrate their intent to waive the collective action provision and thus was not "intentional conduct inconsistent with claiming that right." *See Ulico*, 262 S.W.3d at 778. Thus, the Court finds Defendants did not waive the collective action provision by failing to produce the Licensing Agreement for seven months.

> ii.    *Invoking the judicial process*

Naranjo next contends that Defendants waived enforcement of the arbitration provision by invoking the judicial process without attempting to compel arbitration. Doc. 42, Resp., 8. She argues the collective waiver is part of the arbitration provision, not an independent provision. *Id.* at 9. Thus, Naranjo claims, Defendants cannot enforce the Licensing Agreement's collective action provision because it is part of the arbitration provision Defendants waived. *Id.* Defendants reply that the collective action waiver is independently enforceable. Doc. 43, Reply, 2. The Court agrees that the collective action provision is not dependent upon the validity and applicability of the arbitration provision. Because the collective action provision is independent and neither party seeks to compel arbitration, the Court does not address whether Defendants waived their right to compel arbitration.

If a class or collective action waiver "is not an independent agreement or provision, but is included within the arbitration provision in [a contract]," the class or collective action waiver's applicability "is dependent upon the validity and applicability of the arbitration provision." *See Cash Biz, LP v. Henry*, 539 S.W.3d 342, 354 (Tex. App.—San Antonio 2016), *aff'd*, 551 S.W.3d 111, 119 (Tex. 2018). In determining whether a class or collective action waiver is independent of an arbitration provision, courts employ traditional principles of contractual interpretation. *See, e.g., Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 331 (E.D. Tex. 2019), *aff'd*, 807 F. App'x 320 (5th Cir. 2020).

Under Texas law,[4] the primary concern when interpreting contracts "is to ascertain and to give effect to the intentions of the parties as expressed in the instrument." *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). So the Court begins with the text of the Licensing Agreement. Section 22 of the Licensing Agreement is titled "**ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS.**" Doc. 34-1, Mehmeti Decl., Ex. 1 at 13. The section contains three paragraphs. The first paragraph states that the Licensing Agreement is subject to binding arbitration and sets out various arbitration procedures. *See id.* Ex. 1 at 13. The second paragraph states, in underlined bold font and all capitals, "**<u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY</u>**." *See id.* Ex. 1 at 13. The remainder of the second paragraph describes the various rights that the parties have in the arbitration proceeding. *Id.* Ex. 1 at 13–14. The third paragraph states,

---

[4] In the Licensing Agreement, the parties agreed that the Licensing Agreement would be interpreted pursuant to Texas law. Doc. 34-1, Mehmeti Decl., Ex. 1 at 13.

**LICENSEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT, HE/SHE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT IN ANY PROCEEDING, SHE WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HER BEHALF LICENSEE SHALL WAIVE HER RIGHTS TO ANY SUCH MONETARY RECOVERY.**

*Id.* Ex. 1 at 14.

The Court concludes that the collective action waiver is independent of the arbitration provision for several reasons. First, arbitration and waiver of class and collective actions are both mentioned in the title of Section 22, suggesting that they are addressed separately. Second, the collective action provision provides that the signee "specifically waives" the right to participate in a collective action. *Id.* Ex. 1 at 14. The first two paragraphs, which describe arbitration procedures, contain waivers that are a consequence of the arbitration provision. *See id.* Ex. 1 at 13–14. These waivers do not state that the signee "specifically waives" those rights. Third, the collective action provision is a separate paragraph that does not mention arbitration. *See id.* Ex. 1 at 14. Naranjo urges this third paragraph "'acknowledges' the effect of the arbitration agreement." Doc. 42, Resp., 9. But the paragraph states that the signee "acknowledges that by signing *this agreement*," the signee waives her right to class or collective action. *See* Doc. 34-1, Mehmeti Decl., Ex. 1 at 14 (emphasis added and capitals and bold font omitted). "This Agreement" is used throughout the Licensing Agreement to refer to the document as a whole. *See, e.g.*, *id.* Ex. 1 at 1 ("This Agreement replaces any prior agreement between the parties . . . ."); *id.* Ex. 1 at 13 ("The parties agree that this Agreement is subject to binding arbitration . . . . The arbitration provision contained herein shall be self-executing and shall remain in full force after

expiration or termination of this Agreement."). Thus, the collective action provision does not reference arbitration, even obliquely.

The collective action provision's independence is confirmed by the Licensing Agreement's treatment of the jury trial waiver. Unlike the collective action waiver, the jury trial waiver is not mentioned in the title of Section 22. *See id.* Ex. 1 at 13. And the jury trial waiver is found in a paragraph that addresses various other arbitration procedures, while the collective action waiver has its own paragraph. *See id.* Ex. 1 at 13. Finally, the jury trial waiver does not state that the signee "specifically waives" the right to a trial by jury "by signing this Agreement." *Id.* Ex. 1 at 14. The Licensing Agreement's contrasting treatment of the jury trial waiver, which is simply a consequence of the arbitration provision, and the collective action waiver, which applies to "any court in any proceeding," *see id.* Ex. 1 at 14, demonstrates the independence of the collective action waiver.

Naranjo argues the Court should reach the opposite result and cites *Vine v. PLS Financial Services, Inc.*, 807 F. App'x 320 (5th Cir. 2020) (per curiam) and *Meyer v. Kalanick*, 185 F. Supp. 3d 448 (S.D.N.Y. 2016) in support. The Court does not find *Vine* and *Meyer* persuasive on the facts of this case. In *Vine* and *Meyer*, the class action waivers were contained in arbitration provisions, were surrounded by language describing arbitration procedures, and were explicitly or implicitly made a consequence of the arbitration provision. *See Vine*, 807 F. App'x at 328–29; *Meyer*, 185 F. Supp. 3d at 452–54. For these reasons, the courts in *Vine* and *Meyer* found that the arbitration and waiver provisions were not independent and a party could not waive arbitration and enforce class action waivers. *See Vine*, 807 F. App'x at 328–29; *Meyer*, 185 F. Supp. 3d at 453–54. This case addresses a different arbitration provision. Here, unlike in *Vine* and *Meyer*, the

section title, surrounding provisions, and waiver language all suggest that the collective action waiver is independent of the arbitration provision.

In sum, because the section title mentions arbitration and collective action separately, the collective action provision's surrounding language does not address arbitration, and the phrasing indicates the provision is not merely a consequence of arbitration, the Court concludes the collective action provision is enforceable against Naranjo.

2.      Enforcement of the Collective Action Provision

Naranjo claims that, even if the other Defendants can assert the collective action waiver, "[Defendant Nick] Mehmeti has no basis to enforce that provision" because he is not a party to the Licensing Agreement or mentioned therein. Doc. 42, Resp., 13–15. Defendants respond, "the Complaint alleges substantially interdependent and concerted misconduct by all of the Defendants and seeks to impose liability upon all of the Defendants due to their close relationship with the contracting party[, Defendant PT]." Doc. 43, Reply, 9–10. Defendants assert that Mehmeti may enforce the Licensing Agreement under "principles of agency, equitable estoppel and intertwined claims." *Id.* at 10.

"[T]raditional principles of state law . . . allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 531 (5th Cir. 2019) (internal quotations omitted). In Texas, equitable estoppel is traditionally applied to enforce arbitration agreements against nonsignatories. *See, e.g.*, *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 830–31 (Tex. App.—Dallas 2013, no pet.).

> Equitable estoppel allows a nonsignatory to compel arbitration in two circumstances. First, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories. Second, equitable estoppel may be applied if the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the nonsignatory.

*Tex. Enters., Inc. v. Arnold Oil Co.*, 59 S.W.3d 244, 249 (Tex. App.—San Antonio 2001, no pet.) (internal alteration, citations, and quotations omitted).

As the name suggests, "[t]he linchpin for equitable estoppel is equity—fairness." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). The doctrine prevents a plaintiff from "'hav[ing] it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.*

While equitable estoppel typically arises in the context of arbitration agreements, courts have applied equitable estoppel to enforce other contractual terms. For example, the Eleventh Circuit allowed a nonsignatory to enforce a contractual forum-selection clause, reasoning, "In essence, equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose. A forum-selection clause would be one such burden." *Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) (internal citation omitted). And, as relevant here, courts have invoked equitable estoppel to allow nonsignatory defendants to enforce contractual class action waivers. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 851 (D. Md. 2013) (internal quotations omitted) (applying equitable estoppel to enforce a class action waiver because the signatory raised "allegations of substantially interdependent or

concerted misconduct by both the nonsignatory and one or more signatories to the contract"); *Ordosgoitti v. Werner Enters., Inc.*, 2022 WL 874600, at \*8–10 (D. Neb. Mar. 24, 2022) (applying "alternative estoppel" to enforce a class action waiver because the claims were inseparable from the agreement containing the waiver and the plaintiff alleged coordinated misconduct between signatory and nonsignatory defendants).

The Court agrees that the logic underlying equitable estoppel applies with no less force in the context of collective action waivers. Equitable estoppel prevents signatories from "having their cake and eating it too"; a signatory cannot simultaneously enjoy the benefits of their contract and avoid its burdens simply because they sue a nonsignatory. This is true in the context of arbitration provisions, and it remains true in the context of collective action provisions.

Having determined equitable estoppel is available to enforce collective action waivers, the Court must decide whether it is available on the facts of this case. Here, as in *Grigson*, "equitable estoppel is much more readily applicable [because] the case presents both independent bases . . . for applying [equitable estoppel]." *See Grigson*, 210 F.3d at 527–28. First, Naranjo alleges "substantially interdependent and concerted misconduct" by both a nonsignatory—Mehmeti—and one or more signatories—PT. *See Tex. Enters.*, 59 S.W.3d at 249. Almost all of Naranjo's allegations are alleged against Defendants collectively, and she makes no allegations against Mehmeti individually.

Second, Naranjo relies on the terms of the Licensing Agreement containing the collective action provision. *See id.* The Fifth Circuit has held that FLSA claims arise under the parties' contract, not under the FLSA statute. *See Perry v. BergHOFF Int'l, Inc.*, 805 F. App'x 301, 303 (5th Cir. 2020). This is especially clear where, as here, the claims are dependent on provisions of

the Licensing Agreement. *See id.* The Licensing Agreement provides that Naranjo would pay certain fees and tip-outs to Defendants. *See* Doc. 34-1, Mehmeti Decl., Ex. 1 at 9. Her Amended Complaint alleges that these "fees and tip-outs . . . constitute unlawful kick-backs in violation of [the FLSA]." *See* Doc. 33, Am. Compl., 1.

Because equitable estoppel is available to enforce a collective action waiver and this case presents both independent bases for equitable estoppel, the Court finds that Mehmeti can enforce the collective action waiver.

## IV.

## CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Defendants' Motion (Doc. 34). The Court finds that Naranjo had standing to bring this suit because she had an injury in fact that is fairly traceable to the alleged conduct of Defendants and could be redressed by a favorable determination by this Court. And Naranjo is not required to explicitly plead satisfaction of conditions precedent to state a claim under the FLSA. Therefore, her individual FLSA claim survives the Motion to Dismiss.

However, because Naranjo signed an enforceable collective action waiver and all Defendants can enforce it, her FLSA collective action allegations are **DISMISSED WITH PREJUDICE**.

SO ORDERED.

SIGNED: January 25, 2023.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-23-